# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

SL FINANCIAL SERVICES CORP.,

Plaintiff,

v.  Civil Case No.: WDQ-13-1661

WOODBERRY GRAPHICS, LLC, *et al.*,

Defendants

## REPORT AND RECOMMENDATIONS

This Report and Recommendations addresses the Motion for Entry of Default Judgment (ECF No. 10) filed by Plaintiff, SL Financial Services Corporation ("SL Financial") against the Defendants, Woodberry Graphics, LLC ("Woodberry") and Thomas M. Cheek (collectively "Defendants"). The Defendants have not filed an opposition, and their deadline has now passed. On August 22, 2013, Judge Quarles referred this case to me to review SL Financial's motion and to make recommendations concerning damages, pursuant to 28 U.S.C. § 301 and Local Rule 301.6. (ECF No. 12). I have reviewed SL Financial's Supplemental Affidavit and Declaration Concerning Attorneys' Fees. (ECF Nos. 20, 21). No hearing is deemed necessary. Local Rule 105.6 (D. Md. 2011). For the reasons discussed below, I respectfully recommend that SL Financial's motion (ECF No. 10) be GRANTED and that damages be awarded as set forth herein.

## I.  BACKGROUND

On June 8, 2013, SL Financial filed a Complaint in this Court alleging that Woodberry breached the terms of its Loan Agreement by failing to make payments owed to SL Financial.

Compl. ¶ 21-24. The Complaint also included a breach of contract claim against Mr. Cheek for failing to pay Woodberry's obligations pursuant to a personal guaranty agreement.[1] Compl. ¶ 30-34. According to the Complaint, on October 25, 2006, Woodberry obtained financing from SL Financial to acquire certain equipment. Compl. ¶ 8. In order to induce SL Financial to provide the financing, Mr. Cheek executed a personal guaranty, in which he agreed to pay Woodberry's obligations under the loan agreement in the event of Woodberry's default. Compl. ¶ 10. When Woodberry failed to meet its obligations, SL Financial repossessed the equipment, which served as collateral for the loan, and sold it to a third party. Compl. ¶ 12. After the proceeds from the sale were applied to the balance owed, a deficiency remained, which, to date, neither Woodberry nor Mr. Cheek has satisfied. Compl. ¶ 12.

According to the Supplemental Affidavit, as of September 25, 2013, SL Financial has incurred financial injury totaling $278,742.46, due to Woodberry's breach of the loan agreement and Mr. Cheek's breach of the guaranty. Aff. ¶ 16, (ECF No. 20). That sum includes the principal balance on the two pieces of financed equipment, late charges, interest, attorneys' fees, costs of the equipment sale, and costs of suit, less the amount recouped from the equipment sale. *Id*. Woodberry was served with the summons and Complaint on July 5, 2013, and Mr. Cheek was served with the summons and Complaint on June 15, 2013. (ECF No. 11). The time for Woodberry and Mr. Cheek to answer or otherwise respond expired on July 26, 2013 and July 8, 2013, respectively. *Id.* On August 22, 2013, the Clerk entered an Order of Default against both Defendants. *Id.* On August 19, 2013, SL Financial filed the instant Motion for Default Judgment. (ECF No. 10).

---

[1]The Complaint also included a breach of contract claim against Douglass E. Waring. However, SL Financial requested that this Court administratively stay proceedings against Mr. Waring pending the outcome of his bankruptcy petition in the U.S. Bankruptcy Court for the District of Maryland. *See* ECF No. 7.

## II. STANDARD FOR DEFAULT JUDGMENT

In reviewing Plaintiff's Motion for Default Judgment, the court accepts as true the well-pleaded factual allegations in the complaint as to liability. *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780-81 (4th Cir. 2001). It, however, remains for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action. *Id.*; *see also* 10A Wright, Miller & Kane, *Federal Practice and Procedure* § 2688 (3d ed. Supp. 2010) ("[L]iability is not deemed established simply because of the default . . . and the court, in its discretion, may require some proof of the facts that must be established in order to determine liability.").

If the court determines that liability is established, the court must then determine the appropriate amount of damages. *Ryan*, 253 F.3d at 780-81. The court does not accept factual allegations regarding damages as true, but rather must make an independent determination regarding such allegations. *See, e.g., Credit Lyonnais Secs. (USA), Inc. v. Alcantara*, 183 F.3d 151, 154 (2d Cir. 1999). In so doing, the court may conduct an evidentiary hearing. Fed. R. Civ. P. 55(b)(2). The court can also make a determination of damages without a hearing so long as there is an adequate evidentiary basis in the record for an award. *See, e.g., Adkins v. Teseo*, 180 F. Supp. 2d 15, 17 (D.D.C. 2001) (court need not make determination of damages following entry of default through hearing, but rather may rely on detailed affidavits or documentary evidence to determine the appropriate sum); *see also Trustees of the Nat'l Asbestos Workers Pension Fund v. Ideal Insulation Inc.*, 2011 WL 5151067, at *4 (D. Md. Oct. 27, 2011) (determining, in a case of default judgment against an employer, "the Court may award damages without a hearing if the record supports the damages requested."); *Pentech Fin. Servs. Inc. v. Old Dominion Saw Works, Inc.*, 2009 WL 1872535, at *2 (W.D. Va. June 30, 2009) (concluding that

there was "no need to convene a formal evidentiary hearing on the issue of damages" after default judgment where plaintiff submitted affidavits and electronic records establishing the amount of damages sought); *JTH Tax, Inc. v. Smith*, No. 2:06CV76, 2006 WL 1982762, at *3 (E.D. Va. June 23, 2006) ("If the defendant does not contest the amount pleaded in the complaint and the claim is for a sum that is certain or easily computable, the judgment can be entered for that amount without further hearing.").

In sum, (1) the court must determine whether the unchallenged facts in Plaintiff's Complaint constitute a legitimate cause of action, and, if they do, (2) the court must make an independent determination regarding the appropriate amount of damages and the appropriate injunctive relief.

### III. DISCUSSION

#### a. Breach of Contract

To establish breach of contract under Maryland law, a plaintiff must demonstrate a contractual obligation, breach, and damages. *See, e.g., Kumar v. Dhanda,* 198 Md. App. 337, 345, 17 A.3d 744 (Ct. Spec. App. 2011). SL Financial alleged the existence of a valid contract with Woodberry in the form of a Master Loan and Security Agreement ("the Agreement"). The Agreement contained two equipment schedules, which provided the address for each piece of equipment, and the financed cost. (ECF No. 1, Ex. 1, at 20). It further provided that the "[b]orrower agrees to repay the Loan Agreement in successive installments (which installment payments are inclusive of interest), plus breakage (if any) as set forth in the following Payment Schedule." *Id.* According to the Agreement, Woodberry agreed to make 108 monthly payments of $14,545.55 at an interest rate of 8.90 percent for the first piece of equipment, and 108 monthly payments of $910.30 at an identical interest rate for the second piece of equipment. *Id.* at 21-25.

SL Financial alleged that Woodberry has failed to make payments for either piece of equipment since December 2012.[2] (ECF No. 20, Exs. 4, 5).

SL Financial also alleged the existence of a valid contract with Mr. Cheek in the form of a Personal Guaranty agreement. The Guaranty states that Mr. Cheek "irrevocably and unconditionally guarantees the full and prompt payment and performance in full (but not collection) of all present and future obligations of Borrower to SL USA, arising from SL USA's loan to Borrower of monies to purchase machinery, fixtures or other equipment…" (ECF No. 1, Ex. 3). Mr. Cheek signed the guaranty in his individual capacity and has failed to pay Woodberry's outstanding obligations. Compl. ¶ 31, 33. As a result, accepting the well-pleaded allegations as true for the purposes of this motion, SL Financial has established breach of contract with respect to Woodberry and Mr. Cheek.

### b. Damages

SL Financial has provided an adequate evidentiary basis for an award of damages in this case. Thus, no hearing is necessary. Specifically, SL Financial provided the Master Loan and Security Agreement, which sets out the governing terms of the loan. SL Financial also provided the sworn Supplemental Affidavit of Joseph Littier, Vice President of Portfolio Management for North Mill Equipment Finance, LLC, the servicer for SL Financial. Mr. Littier's Affidavit establishes that the principal balance for the first piece of equipment is $490,001.14 and the balance for the second piece of equipment is $29,691.78. Aff. ¶ 16. In relation to the first piece of equipment, SL Financial calculated the total interest due as of September 25, 2013, at $40,581.75. Aff. ¶ 16. The total interest due for the second piece of equipment is $2,040.58. Aff. ¶ 16. The late charges are $17,774.52 and $141.42, respectively. Aff. ¶ 16. The costs and

---

[2] SL Financial received Woodberry's last payment for the first piece of equipment on December 26, 2012 for the October 2012 monthly installment. SL Financial also received Woodberry's last installment payment for the second piece of equipment on December 21, 2012. *See* (ECF No. 20, Exs. 4, 5).

expenses of the equipment sale total $39,588.81, and the proceeds from the sale total $350,000.00. Aff. ¶ 16. In support of the figures above, SL Financial attached amortization schedules and payment histories reflecting the outstanding principal balance owed on both pieces of equipment, and their respective late charges. (ECF No. 20, Exs. 4, 5). SL Financial also attached an invoice, correspondence, and wire confirmations reflecting the expenses of the equipment storage and sale. (ECF No. 20, Exs. 2, 3). Finally, SL Financial attached an invoice for the sale of the collateral showing the $350,000.00 in net proceeds. (ECF No. 20, Ex. 1). SL Financial properly calculated the total amount owed as $278,742.46.

With respect to attorneys' fees and costs, the Affidavit shows attorneys' fees of $8205.00 and costs of suit totaling $717.76. Aff. ¶ 16. This Court requested SL Financial to provide greater detail as to how it calculated its attorneys' fees. *See* (ECF No. 13). In response to that request, SL Financial has submitted the Declaration of Steven N. Leitess, stockholder and officer of Leitess Friedberg PC, counsel for SL Financial. (ECF No. 21). Attached to the Declaration of Mr. Leitess are invoices and descriptive billing entries, which show expenses incurred in relation to this action, such as filing fees, and rates assessed for tasks performed by attorneys and a paralegal. (ECF No. 21, Exs. 2, 3). The descriptive billing entries show that two attorneys and one paralegal performed the work in this case. Gordon S. Young, a partner who has been admitted to the bar for "more than 13 years," billed at a rate of $295.00 per hour. Decl. ¶ 9, (ECF No. 21, Exs. 1-3). Pierce C. Murphy, an associate who has been admitted to the bar for "more than one year," billed at a rate of $205.00 per hour. Decl. ¶ 10, (ECF No. 21, Exs. 1-3). Finally, Dapo R. Lawal, a paralegal with "more than seven years" of experience, billed at a rate of $150.00 per hour. Decl. ¶ 11, (ECF No. 21, Exs. 1-3).

In calculating an appropriate award of attorneys' fees, the Court must first determine the lodestar amount, defined as a "reasonable hourly rate multiplied by hours reasonably expended." *Grissom v. Mills Corp.*, 549 F.3d 313, 320-21 (4th Cir. 2008). A trial court may exercise its discretion in determining the lodestar amount because it possesses "superior understanding of the litigation," and the matter is "essentially…factual." *Thompson v. HUD,* No. MJG–95–309, 2002 WL 31777631, at *6 n. 18 (D. Md. Nov. 21, 2002) (quoting *Daly v. Hill,* 790 F.2d 1071, 1078–79 (4th Cir.1986)). Once the lodestar amount has been determined, the Court determines a reasonable fee by assessing whether the hours worked were reasonable or whether the request includes hours that were unnecessary or duplicative. In evaluating both the lodestar calculations and the overall reasonable fee, the Court looks to twelve factors, articulated in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717-19 (5th Cir. 1974) and adopted by the Fourth Circuit in *Barber v. Kimbrell's, Inc.*, 577 F.2d 216, 226 (4th Cir. 1978). The factors include:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorneys' fees awards in similar cases.

*Grissom*, 549 F.3d at 321. Appendix B of this Court's Local Rules is also instructive. Appendix B provides guidelines regarding hourly rates for attorneys' fees. *See* Local Rules, Appendix B (D. Md. 2011). The Guidelines cap hourly rates based on the number of years a lawyer has been admitted to the bar. *Id.* A lawyer admitted to the bar for less than five years may bill between $150-$190. *Id.* Paralegals and law clerks may bill between $95-$115. *Id.*

Mr. Leitess's Declaration only establishes that Mr. Murphy has been admitted to the bar "more than one year." Decl. ¶ 10. Assuming Mr. Murphy has been admitted to the bar less than five years, his rate exceeds the cap by $15, and Mr. Lawal's paralegal rate exceeds the cap by $35. Although the Guidelines are "intended solely to provide practical guidance to lawyers and judges when requesting, challenging, and awarding fees," there seems to be no reason to deviate from the Guidelines in this case. Local Rules, Appendix B (3) (D. Md. 2011). As a result, I recommend reducing Mr. Murphy's fee to $170.00 per hour, a rate falling within the middle of the range, which reflects a fee commensurate with the fees of attorneys recently admitted to the bar. Similarly, I recommend reducing Mr. Lawal's fee to $115.00 per hour, the maximum compensable rate for law clerks and paralegals. Additionally, the amounts billed in relation to Mr. Waring's bankruptcy, which total 1.1 hours for Mr. Young, 0.95 hours for Mr. Lawal, and 0.4 hours for Mr. Murphy, should be omitted.[3] Also, the $50.00 private process fee for service on Mr. Waring should not be compensable, as he is not a party to this motion. I therefore recommend an award of fees in the amount of $6,961.75, and costs in the amount of $667.76.

**Conclusion**

For the reasons set forth above, I recommend that:

1. The Court GRANT SL Financial's Motion for Default Judgment; and

2. The Court award SL Financial $269,820.00 as damages for breach of contract, plus $6,961.75 for attorneys' fees, and $667.76 for costs of suit, to be paid jointly and

---

[3] Mr. Lawal actually billed 0.80 hours in an entry dated July 1, 2013, for bankruptcy-related tasks, including reviewing "correspondence from Michael Rinn and Notice of chapter 7 bankruptcy case" and processing the voluntary petition for Douglass Waring. *See* (ECF No. 21, Ex. 2). Mr. Lawal also included, in this same descriptive entry, the tasks of filing and processing the proof of service as to Mr. Cheek. I recommend that the billable time for this entry be reduced to 0.2 hours to better reflect the time spent on tasks related to this motion. I also recommend reducing by half Mr. Lawal's July 8, 2013 billing entry for the ECF filings of the proof of service as to Woodberry and the suggestion of bankruptcy as to Mr. Waring, as Mr. Waring is not a party to this motion. *See* (ECF No. 21, Ex. 2).

severally by the Defendants, plus post-judgment interest as calculated under 28 U.S.C. § 1961.

I also direct the Clerk to mail a copy of this Report and Recommendations to the Defendants at the address listed on SL Financial's Complaint (ECF No. 1).

Any objections to this Report and Recommendations must be served and filed within fourteen (14) days, pursuant to Fed. R. Civ. P. 72(b) and Local Rule 301.5.b.

Dated: October 3, 2013                                /s/
                                        Stephanie A. Gallagher
                                        United States Magistrate Judge